NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARELL LAVAL, | Civil Action No. 10-4416 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| JERSEY CITY HOUSING AUTHORITY, MARIA T. MAIO & GRACE M. MALLEY, | May 10, 2011 |
| Defendants. | |

WIGENTON, District Judge.

Before the Court is Defendants', Jersey City Housing Authority ("JCHA"), Maria T. Maio, and Grace M. Malley, motion to dismiss ("Motion") Darell Laval's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is Plaintiff's motion to amend the complaint pursuant to Federal Rule of Civil Procedure 15. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, this Court hereby **GRANTS** the Motion in part and **DENIES** in part. This Court also **DENIES** Plaintiff's motion to amend the Complaint.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff is an African-American male and a former employee with the JCHA [1], a government entity operating in the State of New Jersey. For twenty-three years, Plaintiff was employed with JCHA. At the time of his termination, Plaintiff was serving as the Regional Assistant Manager. Maria T. Maio is the Executive Director of JCHA and was Plaintiff's direct supervisor. Grace M. Malley is employed with JCHA in the position of "Resident/Staff Development & Strategic Planning."

This action arises from allegations by Plaintiff of discriminatory practices by Defendants for terminating and "target[ing] [him] due to his race and . . . involvement with a political candidate defendant disapproved of . . . ." Specifically, Plaintiff claims that Defendant Maio "treated [him] differently than the other similarly situated Caucasian supervisor." Plaintiff further alleges that "it was very evident that Defendant Maio has a policy of harassing and discriminating against people of color." On August 11, 2010, Plaintiff filed his complaint, claiming the following: race discrimination under New Jersey and federal laws; hostile work environment; violation of his freedom of speech under the First Amendment; intentional infliction of emotional distress; "Equal Protection NJ Constitution, Section 1983"; Fair Labor Standard Act/Equal Pay Act; intentional discrimination under New Jersey and federal laws; right to privacy under the Fourth Amendment; and retaliation under New Jersey and federal laws.[2] Defendants filed their notice of removal with this Court on August 27, 2010. Defendants filed

---

[1] The government entity is presently known as Housing Authority of Jersey City. For the purposes of this Opinion, the court will refer to the government entity in question as the JCHA.

[2] In reading Plaintiff's complaint, which originated in state court, the basis of some of his legal claims are unclear. Specifically, one count alleges "Equal Protection NJ Constitution, Section 1983." It is unclear if his claim is based on both federal and state laws. This Court presumes Plaintiff is citing to both Section 1983 under federal statute and the New Jersey Constitution.

motions to dismiss and collectively filed a joint brief supporting their motions on October 19, 2010.

On December 2, 2010, Plaintiff submitted his papers in response to Defendants' Motion . Plaintiff requested leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15, for the purpose of "streamlining … the facts already presented in the Second Amended Complaint to properly reflect the laws that were pled as being violated . . . ." Defendants oppose the motion.

**STANDARD OF REVIEW**

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." While the complaint is to be construed in the light most favorable to the movant, the plaintiff is obligated to provide factual allegations that would render a plaintiff's entitlement to relief plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

The court may dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "only if no relief could be granted under any set of facts consistent with the allegations of the complaint." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). To determine whether a complaint is sufficient, the court should disregard legal conclusions in the complaint and determine whether the remaining factual allegations suggest that a plaintiff has a plausible claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010).

3

Whether allegations in a complaint are plausible is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. Accordingly, a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 1940 (citing *Twombly*, 550 U.S. at 556). Further, a complaint should be dismissed for failure to show that the movant is entitled to relief pursuant to Rule 8(a)(2), if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 1950.

## DISCUSSION

## MOTION TO DISMISS

### Title VII of the Civil Rights Act

A plaintiff must file a complaint with the Equal Employment Opportunity Commission ("EEOC") and wait 180 days until bringing suit under Title VII of the Civil Rights Act of 1964 ("Title VII"). 42 U.S.C. § 2000e-5; *see also Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). "It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)). The administrative requirement provides the charged party with notice and allows the EEOC an opportunity to resolve the dispute without resorting to litigation. *Id.* With that purpose, "requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). Consequently, non-exhaustion of administrative remedies constitutes a

basis for dismissal under Federal Rule of Civil Procedure 12(b)(6). *Phillips v. Sheraton Soc'y Hill*, 163 Fed. Appx. 93, 94 (3d Cir. 2005).

Title VII requires exhaustion of all available administrative remedies. Here, Plaintiff brings a claim for racial discrimination and hostile work environment under Title VII, but at no point in the pleadings does Plaintiff indicate that he filed a charge against Defendants with the EEOC. Because Plaintiff failed to exhaust the administrative remedies available through the EEOC, all claims pursuant to Title VII are dismissed.

**First Amendment**

For a 42 U.S.C. § 1983 violation, a plaintiff must prove that the defendant, while acting under color of state law, violated "a right secured by the Constitution and laws of the United States . . . ." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). In accordance with 42 U.S.C. § 1983, "[a] public employee's statement is protected by the First Amendment when, '(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made.'" *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)).

In addition, in order to plead a retaliation claim under First Amendment, Plaintiff "must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Plaintiff complains that his termination stemmed from discrimination against him on the basis of his political affiliation, in violation of his First Amendment right. He alleges his right to freedom of expression was violated and "he was heavily embattled because he supported a political candidate in opposition of Defendant Maio's candidate."

Similar to the appellant in *Gorum*, Plaintiff is unable to establish a First Amendment violation because he "is unable to prove that he conducted his allegedly protected activities as a citizen or that he spoke on a matter of public concern." 561 F.3d at 185. While Plaintiff alleges that he was "terminated for helping a political candidate," he fails to provide a factual basis, including specific facts, statements, or actions regarding this claim. He has presented no factual examples illustrating how he was reprimanded, or how Defendant discriminated against him solely because of political affiliation. Plaintiff recognizes in his Complaint that he was reprimanded for personal use of JCHA's phone, computer, and vehicle. The restriction on the personal use of JCHA's property was not directed solely at Plaintiff as evidenced by the implementation of an official policy after he was reprimanded. Plaintiff fails to corroborate his belief that he was targeted because of his political association with sufficient factual allegations. Plaintiff's personal belief and generalized accusations are insufficient to justify a tangible First Amendment violation or subsequent retaliation.

**Right to Privacy under the Fourth Amendment**

The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *Camara v. Mun. Court of S.F.*, 387 U.S. 523, 528 (1967). "It is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations." *City of Ontario, Cal v. Quon*, 130 S. Ct. 2619,

2627 (2010) (citing *Camara*, 387 U.S. at 530). In addition, the Fourth Amendment applies when the Government acts in its capacity as an employer. *Nat'l Treasury Emp. Union v. Von Raab*, 489 U.S. 656, 665 (1989). Accordingly, "[i]ndividuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987). As a result, "[t]he fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search. If the search is reasonable, there is no constitutional problem, for the Fourth Amendment only protects individuals from unreasonable searches and seizures." *United States v. Sczubelek*, 402 F.3d 175, 182 (3d Cir. 2005).

Plaintiff states that JCHA "provided [him] with living accommodations, at the Berry Gardens site in 2006." In addition, Plaintiff alleges that "Defendant raided [this] apartment . . . [and] used the content of plaintiff's personal files/items in the apartment as evidence against [him]." Further, Plaintiff contends that "Maio's intent [to conduct a search of his living accommodations] was for illicit purposes not for employment related reasons . . . ."

On the other hand, Defendants argue that there was no violation of his right to privacy because Defendants searched Plaintiff's office. Yet, Defendants have not articulated a legitimate work-related reason for the search of Plaintiff's apartment. In holding the facts in the light most favorable to the non-moving party, this Court cannot determine that Defendants' actions did not violate Plaintiff's Fourth Amendment rights.

**Right to Make and Enforce Contracts**

For a plaintiff to prevail under 42 U.S.C. § 1981, he must establish "(1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in' § 1981 . . . ." *Pryor v.*

7

*Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002).  The activities enumerated in 42 U.S.C. § 1981 are the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."  Further, "make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981.

Plaintiff does not put forth sufficient facts in his Complaint to support this claim.  Most of his comments regarding racial discrimination are cursory and conclusory.  The only fact alleged by Plaintiff that would support his racial discrimination claims is that the other similarly situation Caucasian supervisor "was provided an assistant and received better benefits."  This statement alone does not provide sufficient support for this Court to conclude that Plaintiff has a plausible claim for relief.

**Equal Pay Act of 1963**

According to the Complaint, Plaintiff "worked overtime hours without being compensated" in violation of the Equal Pay Act of 1963.  Title 29, Section 206 of the United States Code, provides that:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees *on the basis of sex* by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

[29 U.S.C. § 206(d)(1) (emphasis added.).]

The EPA applies to discriminatory practices in "wage differentials attributable to sex discrimination."  *Washington Cnty. v. Gunther*, 452 U.S. 161, 170 (1981).  Because Plaintiff

contends that the discriminatory actions arose on the basis of his race and political affiliation, the EPA does not apply to his cause of action.  Because Plaintiff's claim is not pursuant to wage disparity on the basis of sex, his EPA claim is dismissed for failure to state a claim upon which relief can be granted.

**The Lilly Ledbetter Fair Pay Act**

Likewise, Plaintiff alleges that its "equal pay cause of action should proceed" because he "can plead a prima facie case for pay under The Lilly Ledbetter Fair Pay Act."  Plaintiff offers the following provision from 42 U.S.C. § 2000e:

> An unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

[42 U.S.C. § 2000e-5(e)(3)(A).]

Plaintiff contends, "Defendant Maio[,] based upon her position[,] made up rules and policies that only applied to plaintiff and other minorities."  Further, Plaintiff states that "[u]nder color of state law and their official positions, Defendants have denied Plaintiff equal protection of [sic] under the law by discriminating against him on account of [his] race and treating [him] more harshly than similar-situated white managers." *Id.* at 24.  As previously mentioned, Plaintiff failed to submit a claim of discrimination with the EEOC.  Therefore, the Court also dismisses the equal pay cause of action because no relief can be granted.  *See Ragsdale v. Holder*, 668 F. Supp. 2d 7, 20 (D.D.C. 2009) (stating that "the Fair Pay Act does not eliminate the requirement that a plaintiff exhaust available administrative remedies when alleging discrete acts of discrimination").

**The Fair Labor Standards Act**

Plaintiff fares no better in his claim for violation of the Fair Labor Standards Act of 1938. Sections 6 and 7 of the Fair Labor Standards Act ("FLSA") guarantee most employees a minimum wage and overtime pay. 29 U.S.C. §§ 206-207. However, individuals working in an executive, administrative, or professional capacity are exempt from coverage under the FLSA. *See* 29 U.S.C. § 213 (a)(1); *see also Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 183 (3d Cir. 1988). An employee serves in an executive capacity if his "'primary duty' consisted of 'management' of the operation for which he is employed." *McDowell v. Cherry Hill Twp.*, 2005 U.S. Dist. LEXIS 29327, *37 (D.N.J. Nov. 21, 2005).

According to Plaintiff, he worked overtime without pay. However, Defendants contend that Plaintiff is a "bona fide executive" exempted from overtime pay because he satisfies all of the requirements under the FLSA. "To qualify as an exempt executive," under the FLSA, an "employee must customarily and regularly direct the work of two or more other employees." 29 CFR § 541.104. In addition, this Court considers the ability of Plaintiff to advance, promote, or otherwise change the status of other employees. 29 CFR § 541.100(a)(4).

This Court finds that executive employee exemption applies here. In *Smith v. Johnson & Johnson,* the Third Circuit affirmed an employee exemption because of "the independent and managerial" characteristics that plaintiff's position required. 593 F.3d 280, 285 (3d Cir. 2010). In *Smith*, the plaintiff was involved in a high-level of planning and foresight as a part of her duties for the company. *Id.* In the circumstances here, Plaintiff was employed as a Regional Assistant Manager for which he "abated emergencies and handled maintenance situations after hours and on the weekends." In fact, Plaintiff's full range of job responsibilities include, but were not limited to, the "responsibility of managing 4-5 difficult JCHA developments and the

supervision of 6 housing managers." Plaintiff was also responsible for evaluating his staff members. Because Plaintiff was an employee in an executive function, this Court finds that Plaintiff is exempt from the overtime mandate, thereby, the Court dismisses his cause of action. *Id.* at 19.

**The New Jersey Law Against Discrimination**

The New Jersey Law Against Discrimination ("LAD") prohibits discrimination in employment on the basis of age, sex, race, national origin, et cetera. N.J.S.A. §§ 10:5-1 to 10:5-4. There are four requirements to prevail on a claim for hostile work environment. These elements include the following: "the complained of conduct (1) would not have occurred but for the employee's [protected status]; (2) and it was severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 603-04 (1993) (emphasis omitted).

"When evaluating whether conduct is sufficiently severe or pervasive to create a hostile work environment, we focus on the 'harassing conduct . . ., not its effect on the plaintiff or the work environment.'" *Cutler v. Dorn*, 196 N.J. 419, 431 (2008) (quoting *Lehmann v. Toys R Us, Inc.*, 132 N.J. at 606). The conduct must be such that it would " make a reasonable [person] believe that the conditions of employment are altered and [that the] working environment is hostile." *Id.* (quoting *Lehmann v. Toys R Us, Inc.*, 132 N.J. at 604) (alterations in original). The court must examine the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 432 (quoting *Green v. Jersey City Bd. of Educ.*, 177 N.J. 434, 447 (2003)).

The basis of Plaintiff's argument is that Maio "created a hostile work environment by constantly harassing and discriminating against plaintiff and people of color." Plaintiff contends that Defendant Maio had a reputation for hiring "those less qualified for positions than people of color applying for the same positions," for "constant[ly] micromanaging [] African-Americans," and for "mismanaging white employees by allowing them [] greater latitude to violate policies that she did not allow African-Americans to do … creating a toxic environment."

Plaintiff fails to state a claim against the Defendants because he does not satisfy the second, third, or fourth elements for a violation under LAD. Plaintiff declares that Maio has a reputation for hiring Caucasian individuals that are less qualified for positions over "people of color." However, this is merely a conclusory statement. Further, Plaintiff's belief that Maio "micromanaged" African-Americans more so than "white employees" does not rise to the level of severe or pervasive as required under New Jersey law. Plaintiff does not put forth any facts regarding incidents of discrimination that would support this matter going forward. Because Plaintiff has not established the four elements, the LAD claim is dismissed.

**<u>Intentional Infliction of Emotional Distress</u>**

To prevail on a claim for intentional infliction of emotional distress, the plaintiff "must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988). Conduct is outrageous when it is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Before a movant may establish a claim for intentional infliction of emotional distress, "a plaintiff must submit a notice of claim to the public entity within ninety days of the claim's accrual." *Velez v.*

*City of Jersey City*, 180 N.J. 284, 290 (2004). Furthermore, the New Jersey Tort Claims Act applies to cases involving a public entity. N.J.S.A. § 59:8-3.

In the present matter, Plaintiff failed to file a notice of claim in accordance with the Tort Claims Act. Accordingly, Plaintiff's failure to comply with the notice requirement of New Jersey Tort Claims Act bars his claim. Therefore, this Court grants Defendants' Motion as it relates to the claim of intentional infliction of emotional distress.

**MOTION TO AMEND**

Pursuant to Federal Rule of Civil Procedure 15(a), a plaintiff may amend a complaint once as a matter of course within the permitted time period. Fed. R. Civ. P. 15(a)(1). This court has discretion to grant a party leave to amend its pleading under Federal Rule of Civil Procedure 15(a)(2). A party may amend a pleading with the court's leave which should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may deny leave to amend "if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, [] prejudicial to the opposing party," or fails to state a cause of action. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). A motion to amend may also be denied if the amendment would be futile. *F.D.I.C. v. Bathgate*, 27 F.3d 850, 874 (3d Cir.1994).

Here, Plaintiff seeks leave to amend the Complaint to clarify allegations, specify the intended party for each claim, and streamline the facts surrounding his accusations. This effort is acknowledged, but remains futile. The Proposed Amended Complaint lists eight counts essentially alleging violations related to 42 U.S.C. § 2000e, and seeks to correct wrongfully named parties, specifically the Housing Authority of Jersey City and Grace Malley. While the amendment improves upon the clarity in the original complaint, the Proposed Amended

Complaint still would not withstand a renewed motion to dismiss for the reasons stated previously in this Opinion.

**CONCLUSION**

Accepting the facts in the pleadings as true and affording Plaintiff the benefit of all reasonable inferences in the light most favorable to him, this Court concludes that Plaintiff has not adequately pled majority of his claims. Only Plaintiff's Fourth Amendment claim survives Defendants' motion to dismiss. Plaintiff's motion to amend is also denied.


                                                           s/Susan D. Wigenton, U.S.D.J.

Orig:  Clerk
Cc:    Madeline Cox Arleo, U.S.M.J.
        Parties